UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARCOS H. GUTIERREZ, | ) | 3:22-cv-01058 (KAD) |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DR. RICARDO RUIZ, et al., | ) | DECEMBER 12, 2022 |
| *Defendants*. | ) | |

### **INITIAL REVIEW ORDER**[1]

Kari A. Dooley, United States District Judge:

Plaintiff Marcos H. Gutierrez, an inmate who is currently incarcerated at the Carl Robinson Correctional Institution ("Robinson") within the custody of the Department of Correction ("DOC"),[2] filed this civil rights complaint pursuant to 42 U.S.C. § 1983 against four DOC employees: Hartford Correctional Center ("HCC") Doctor Ricardo Ruiz, HCC Medical Supervisor John Doe #1 ("Mr. Dobos"), Cheshire Correctional Institution ("Cheshire") John/Jane Doe #2, and DOC Commissioner Angel Quiros. Compl. at 2–3, ECF No. 1. Specifically, he alleges that Defendants violated his Eighth Amendment rights by acting with deliberate indifference to his medical needs. *Id.* at 9. He seeks damages, a declaratory judgment, and injunctive relief against Defendants in their individual and official capacities. *See id.* at 9–10.

For the following reasons, the Court will permit Plaintiff to proceed on his claims of Fourteenth and Eighth Amendment deliberate indifference to his medical needs.

---

[1] The page numbers cited to in this Order regarding any documents that have been electronically filed refer to the page numbers imprinted by the electronic case filing system on the header of the documents and not to the page numbers of the original documents, if any.

[2] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). Plaintiff was sentenced on August 10, 2021 to a term of incarceration that has not yet expired. This Information regarding Plaintiff's confinement status can be found on the Department of Correction website under Inmate Search using his CT Inmate Number: 279956. *See Inmate Information*, CT Dep't of Corr., http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=279956 (last visited Dec. 5, 2022).

1

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and dismiss any portion of a complaint that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a *pro se* complaint liberally," the complaint must include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

**ALLEGATIONS**

For purposes of initial review, the Court considers all of the allegations in the complaint to be true.

Plaintiff is a DOC prisoner who is of Puerto Rican descent and does not speak English. Compl. at 5 ¶ 1. In April 2020, while housed at HCC, Plaintiff woke up from his sleep with

excruciating pain in his left hand where he had previously sustained an injury. *Id.* ¶ 2. After making several complaints and seeking treatment for his pain, he had X-rays taken of his left hand on October 1, 2020. While he was waiting for treatment, both Dr. Ruiz and John Doe #1 (who is known as "Mr. Dobos") refused to prescribe or otherwise provide him with any pain medication, although he was experiencing the "w[o]rst pain in his life." *Id.* ¶¶ 4, 13.

Later that day, Dr. Ruiz, who was able to converse with Plaintiff in Spanish, informed Plaintiff that his X-rays did not show anything wrong with his hand. *Id.* ¶¶ 5, 8. Later on in their conversation, Dr. Ruiz admitted that Plaintiff needed surgery on his left hand but explained that he did not want to waste time doing paperwork that would be denied on the basis of Plaintiff's status at the time as an unsentenced inmate. *Id.* ¶ 6. Following this consultation, Dr. Ruiz denied Plaintiff "adequate treatment" for his left hand even though he knew that it was progressively getting worse. *Id.* ¶ 9. Later reviews of the X-rays noted "remote injury—avulsion of the sty[l]oid of ulnar." *Id.* ¶ 7.

Plaintiff complained to HCC Deputy Warden Long about Dr. Ruiz's failure to provide him with either medical treatment or pain medication. *Id.* ¶ 10. Thereafter, Dr. Ruiz saw Plaintiff to inform him that the medication he had prescribed for Plaintiff's unrelated neck injury should have also relieved his pain in his left hand. *Id.* ¶ 11. However, Plaintiff informed both Dr. Ruiz and Mr. Dobos that this medication failed to relieve the excruciating pain in his left hand. *Id.* ¶ 12.

Plaintiff has continued to experience pain in his left hand and wrist ever since April 2020. *Id.* ¶ 13. He informed both Dr. Ruiz and Mr. Dobos about his pain, but they provided him with no relief or treatment. *Id.* His left hand's condition deteriorated due to the lack of treatment: he lost the ability to move his left wrist and retained only limited movement in his fingers. *Id.* ¶¶ 14–15.

On August 13, 2021, Plaintiff was transferred to MacDougall-Walker Correctional Institution ("MCWI") for assessment and/or classification. *Id.* ¶ 16. During his stay at MCWI, the facility medical staff was not informed of his left-hand injury, nor did they have the relevant records regarding his injury. *Id.* ¶ 17. On September 23, 2021, he was transferred to Cheshire. *Id.* ¶ 18. After being admitted to Cheshire, he complained about excruciating pain in his left hand to the facility's Medical Department Supervisor, John/Jane Doe #2, who was responsible for arranging inmates' specialized medical care. *Id.* ¶¶ 19, 25. Doe #2 did not take any responsive action until December 22, 2021, when Plaintiff saw RN Pereda, who referred him to see an orthopedist. *Id.* ¶¶ 19–21.

On March 4, 2022, Plaintiff was seen by Dr. Maletz,[3] who informed him that "a film in 2020 revealed ulnar styloid ossicle and changes in the lunate—some setting of the capito-lunate articulation," and diagnosed him with post-traumatic carpal "collapse." *Id.* ¶ 21. A few weeks later, on April 21, 2022, Plaintiff filed a Health Services Administrative Remedy that was "upheld" on April 26, 2022 because he was not receiving medication or treatment for the painful condition of his left hand. *Id.* ¶ 22.

On April 26, 2022, Dr. Maletz noted that Plaintiff had progressive pain and increasing dysfunction of his wrist and that Plaintiff had been "waiting for two years to have this addressed." *Id.* ¶ 24. Although Plaintiff complained to Doe #2 about his left hand, his requests for treatment and pain medication were ignored. *Id.* ¶ 23.

**DISCUSSION**

Section 1983 of Title 42 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any

---

[3] Plaintiff's Complaint refers to this doctor as both "Maletz" and "Malet." *See id.* ¶¶ 21, 24.

4

rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991))). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (holding that a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983, and that "it is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had").

The Court reviews the complaint to determine whether Plaintiff has alleged facts, which, if proven, establish an actionable deliberate indifference claim against each of the defendants under section 1983. Plaintiff's status as either a convicted prisoner or a pretrial detainee dictates whether his claim of deliberate indifference is analyzed under the Eighth or Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29–35, 33 n.9 (2d Cir. 2017). Claims alleging deliberate

indifference to medical needs are analyzed under the Due Process Clause of the Fourteenth Amendment when brought by pretrial detainees, *see id.* at 29, but are analyzed under the cruel and unusual punishment clause of the Eighth Amendment when brought by a sentenced prisoner, *see Charles v. Orange Cnty.*, 925 F.3d 73, 85 (2d Cir. 2019).

Here, Plaintiff has alleged that he was an unsentenced prisoner when he saw Dr. Ruiz and Mr. Dobos in 2020 at HCC, *see* Compl. ¶ 6, and the publicly available information on the DOC website shows that he was not sentenced until August 10, 2021.[4] Accordingly, his claims of medical deliberate indifference against Dr. Ruiz and Mr. Dobos are analyzed under the Fourteenth Amendment's substantive due process standards. By contrast, his deliberate indifference claims against Doe #2 arose after his transfer to Cheshire on September 23, 2021 (when he was a sentenced prisoner) and are therefore governed by the Eighth Amendment.

To prevail on either his Fourteenth or Eighth Amendment claims, Plaintiff must allege facts to satisfy two prongs: (1) an "objective prong" showing that he had a serious medical need that posed an unreasonable risk of serious harm to him; and (2) a subjective, or "*mens rea*," prong showing that a defendant acted with deliberate indifference to that serious medical need. *See Charles*, 925 F.3d at 86 (citing *Estelle*, 429 U.S. at 105, and *Darnell*, 849 F.3d at 29).[5]

**Fourteenth Amendment**

Whether an inmate has satisfied the objective prong of a deliberate indifference claim is analytically the same under the Eighth and Fourteenth Amendments. *See Darnell*, 849 F.3d at 30. To satisfy the objective prong, an inmate must allege facts showing that the constitutional deprivation—here, the inadequacy of medical care—was "sufficiently serious." *See Hathaway v.*

---

[4] *See Inmate Information*, CT Dep't of Corr., http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=279956 (last visited Dec. 5, 2022).
[5] As discussed further, the Fourteenth and Eighth Amendments differ with respect to the second element. *Darnell*, 849 F.3d at 30.

*Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). To determine whether inadequate medical care is sufficiently serious, a court should "examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). A sufficiently serious deprivation can exist if the plaintiff suffers from "a condition of urgency[,] such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86. A medical condition may not initially be sufficiently serious, but it may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000). Factors relevant to evaluating the seriousness of a medical condition include "whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles*, 925 F.3d at 86.

"In cases where a prisoner alleges a delay in medical treatment, courts examine both the seriousness of the prisoner's medical conditions and the harm caused by any unreasonable delay." *Lombardo v. Graham*, 807 F. App'x 120, 123 (2d Cir. 2020) (citing *Salahuddin*, 467 F.3d at 280). The court's objective "serious medical need inquiry can properly take into account the severity of the temporary deprivation alleged by the prisoner." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003). The court should consider the "particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition." *Id.* "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Id.* at 187; *see also Bilal v. White*, 494 F. App'x

7

143, 145–46 (2d Cir. 2012) ("Even assuming that [Inmate]'s conditions could produce serious complications if neglected over sufficient time, there is no evidence that [Inmate]'s conditions worsened over the hours of delay here." (internal citations omitted)).[6]

The court concludes for purposes of initial review that Plaintiff has alleged a sufficiently serious deprivation based on his pain and the deterioration of his left hand's condition during the course of his incarceration at HCC. Plaintiff alleges that his left hand's condition caused him excruciating pain, an inability to move his wrist, and difficulty moving his fingers. Compl. ¶¶ 1–4, 13–15. Plaintiff further alleges that Dr. Maletz noted in April 2022 that Plaintiff's left hand's condition could have been diagnosed in 2020 and that his hand's condition and resulting pain progressed during the two-year period in which he waited for treatment. *Id.* ¶¶ 21, 24.

The Court next considers whether Plaintiff has plausibly alleged facts to satisfy the subjective *mens rea* prong of his Fourteenth Amendment claims against Dr. Ruiz and Mr. Dobos.

"[D]eliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind." *Charles*, 925 F.3d at 86 (citing *Darnell*, 849 F.3d at 33–34). To satisfy the subjective prong, a detainee "can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* at 87 (emphasis in original). A detainee must, however, allege

---

[6] Courts within the Second Circuit have found that temporary treatment delays satisfy the objective seriousness requirement under circumstances involving needlessly prolonged delays, or where officials deliberately delayed treatment as a form of punishment or ignored life-threatening and fast-degenerating conditions. *See, e.g.*, *Feliciano v. Anderson*, No. 15-CV-4106 (LTS) (JLC), 2017 WL 1189747, at *11 (S.D.N.Y. Mar. 30, 2017) ("Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a 'life-threatening and fast-degenerating' condition for three days; or delayed major surgery for over two years." (quoting *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233 (2d Cir. 1999))).

8

more than mere negligence, as "negligence . . . does not, without more, engender a constitutional claim." *Sanders v. Laplante*, No. 3:19-cv-01151 (CSH), 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019) (quotation omitted); *see also Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence.").

As to Dr. Ruiz, Plaintiff challenges Dr. Ruiz's medical decisions, alleging that Dr. Ruiz failed to provide adequate pain medication and treatment for Plaintiff's left hand's condition. It is well established that "mere disagreement over the proper treatment" will not support a constitutional deliberate indifference claim as long as the treatment provided is "adequate." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998). In most instances, an inmate's challenge to a provider's medical judgment will raise an issue of negligence or medical malpractice that is insufficient to amount to a constitutional claim. *See e.g.*, *Boyd v. Deasis*, 524 F. Supp. 3d 128, 144 (W.D.N.Y. 2021) (holding that a pretrial detainee's disagreement with medical treatment was insufficient to support a constitutional deliberate indifference claim). However, "[i]n certain instances, a physician may be deliberately indifferent if he or she consciously chooses 'an easier and less efficacious' treatment plan," as is evident when treatment recommendations are not derived from "sound medical judgment," but rather from "ulterior motives." *Chance*, 143 F.3d at 703–04 (holding that the plaintiff stated a claim for deliberate indifference by alleging that the defendants had recommended extracting his teeth because of monetary incentives).

Plaintiff alleges that Dr. Ruiz's failure to treat him was not based on sound medical judgment. Rather, Plaintiff alleges that Dr. Ruiz first lied to him regarding his initial X-Rays, telling Plaintiff that the X-Ray showed nothing wrong with his hand. He further alleges that Dr. Ruiz later admitted that his hand needed surgery, but that Dr. Ruiz would not pursue surgery because he did not want to "waste time doing paper-work that would wind-up being denied" on

9

the basis of Plaintiff's status as an unsentenced inmate. *Id.* ¶ 6. Rather than providing necessary treatment, Dr. Ruiz allegedly "did absolutely nothing" despite knowing that Plaintiff had a painful and progressive condition. *Id.* ¶ 13. In addition, Dr. Ruiz allegedly failed to provide Plaintiff with effective pain medication when Plaintiff was experiencing the "w[o]rst pain in his life" and still denied him effective pain medication after being informed that another medication was not providing relief. *Id.* ¶¶ 4, 11–14. Plaintiff bolsters these allegations with Dr. Maletz's assessment two years later that the 2020 X-Ray revealed that Plaintiff suffered a "post traumatic carpal 'collapse'" and that Plaintiff suffered from "progressive pain and increasing dysfunction of his wrist" as a result. *Id.* ¶¶ 21, 24.

Construed most favorably to Plaintiff, these allegations plausibly allege that Dr. Ruiz acted with deliberate indifference to Plaintiff's serious medical condition. *See Hemmings v. Gorczyk*, 134 F.3d 104, 106–07 (2d Cir. 1998) (*per curiam*) (reversing the dismissal of a deliberate indifference claim where the plaintiff alleged facts that his condition was sufficiently painful to satisfy the objective prong and that the defendants "willfully disregarded" his condition despite his complaints prior to seeing a specialist who "expressed shock at the prison medical staff's failure to diagnose and treat the injury").

Plaintiff's complaint also alleges that Mr. Dobos failed to provide Plaintiff with treatment after being informed of Plaintiff's severe pain and worsening left-hand condition. Compl. ¶¶ 4, 12–14. It is unclear whether Mr. Dobos was in a position to provide Plaintiff with pain medication or any further medical treatment. However, Plaintiff has identified Mr. Dobos as a "Medical Department Supervisor." Compl. at 3. Thus, Plaintiff's complaint raises at least an inference that Mr. Dobos knew about Plaintiff's serious medical needs and had the ability to provide Plaintiff some remedial treatment and pain relief. Thus, the Court will also permit Plaintiff to proceed

against Mr. Dobos in his individual capacity for further development of the record as to Mr. Dobos's deliberate indifference to Plaintiff's need for treatment and pain relief as a result of his left-hand condition.

**Eighth Amendment**

Plaintiff also alleges that Doe #2, a "Medical Department Supervisor" at Cheshire, was deliberately indifferent to his medical condition. Compl. at 3.[7]

As discussed above, the standards governing the objective prong for the Eighth and Fourteenth Amendments are the same. As against Doe #2, Plaintiff alleges first that he endured a three-month delay in treatment after he arrived at Cheshire in September 2021. *Id.* ¶¶ 19–20. He further alleges that he did not receive medical treatment after he was diagnosed by Dr. Maletz in March and April 2022. *Id.* at 8 ¶¶ 21–25; 9 ¶ 2 (requesting relief in the form of surgery and other treatment for his left hand). For the reasons stated above, Plaintiff has plausibly alleged facts to satisfy the Eighth Amendment's objective prong based on the inadequate medical treatment of his sufficiently serious left-hand condition.

To plausibly allege deliberate indifference under the Eighth Amendment, Plaintiff must allege that the Defendants were actually aware of a substantial risk that the Plaintiff would suffer serious harm as a result of their conduct. *See Salahuddin*, 467 F.3d at 280–81. For a claim based on a delay in medical treatment, a defendant must have been aware of a substantial risk that the inmate would suffer serious harm because of his or her actions or inactions. *See id.*; *Amaker v. Coombe,* No. 96 Civ. 1622 (JGK), 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002) ("A delay in medical treatment does not by itself violate an inmate's Eighth Amendment rights unless the delay

---

[7] At the time of his transfer to Cheshire on September 23, 2021, Plaintiff was a sentenced inmate. Thus, the Court considers whether Plaintiff has alleged a plausible deliberate indifference claim against Doe #2 under the Eighth Amendment.

reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment.").

Plaintiff first alleges that upon his transfer to Cheshire on September 23, 2021, he complained of excruciating pain in his left hand to Doe #2, who was allegedly responsible for providing inmate medical care and arranging specialized inmate medical care. Compl. ¶¶ 18–20, 25. He claims that Doe #2 "did nothing until December 22, 2021," when Plaintiff saw RN Pereda. *Id.* ¶¶ 19–20. But these allegations reflect that he received medical treatment within three months of his arrival at Cheshire, when he had a consultation with RN Pereda, and that this consultation resulted in a referral to and appointments with Orthopedist Dr. Maletz in March and April 2022. No allegations suggest that Doe #2 had the ability to provide him with a more immediate appointment. *See Rahim v. Barsto*, No. 3:22cv619 (MPS), 2022 WL 2704102, at *5 (D. Conn. July 12, 2022) (dismissing a deliberate indifference claim where no facts indicated that the defendant could, but failed to, exercise an ability to provide the plaintiff with a more immediate medical appointment). Nor do any alleged facts suggest that Doe #2 was aware that the delay in medical attention from September 23 to December 21, 2021 subjected Plaintiff to a substantial risk of harm. Thus, Plaintiff's complaint fails to plausibly allege that Doe #2 acted with deliberate indifference to his need for medical attention after being informed of Plaintiff's medical needs upon his arrival at Cheshire.

Plaintiff next alleges that he informed Doe #2 of his medical diagnosis and need for medical treatment and effective pain relief after April 26, 2022, but that Doe #2 ignored his requests. *See* Compl. ¶¶ 22–23. He claims that Doe #2's failure and refusal to act caused his injury to worsen

12

and prolonged his excruciating pain and that Doe #2 was aware of his worsening condition. *Id.* ¶ 25.

For initial pleading purposes, Plaintiff has sufficiently alleged that after April 26, 2022, Doe #2 acted with a conscious disregard of (1) Plaintiff's need for medical treatment and pain medication for his left hand, and (2) the harm caused by delaying Plaintiff's medical treatment and his access to effective pain medication for his left hand. These Eighth Amendment medical indifference claims may proceed against Doe #2 for further development of the record.

### Supervisory Liability for Commissioner Quiros

Plaintiff has not alleged any plausible claim for damages against Commissioner Quiros for any violations of the United States Constitution. There are no allegations that Commissioner Quiros was personally involved with Plaintiff's medical treatment. Nor does Plaintiff allege any facts indicating that Commissioner Quiros was aware or should have been aware of Plaintiff's need for medical treatment and pain relief. As the Second Circuit noted, "[a]lthough we afford a *pro se* litigant a certain degree of latitude in the sufficiency of his factual allegations, a liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled." *Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) (internal quotation mark omitted). Accordingly, the Court dismisses as not plausible any claims for damages under 42 U.S.C. § 1983 against Commissioner Quiros.

### Official Capacity Claims

Plaintiff also asserts claims against all of the Defendants in their official capacities, seeking damages, a declaratory judgment, and injunctive relief. *See* Compl. at 9. As an initial matter, any claims for damages from Defendants in their official capacities are barred by the Eleventh

Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 n.17 (1985) ("The Court has held that § 1983 was not intended to abrogate a State's Eleventh Amendment immunity.").

Plaintiff may, however, proceed against Defendants in their official capacities to the extent that Plaintiff is alleging an ongoing constitutional violation. *See Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). In *Ex parte Young*, the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity from suit to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *Id.* at 254–56; *see In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371–74 (2d Cir. 2005). As this exception to Eleventh Amendment immunity "does not permit judgments against state officers declaring that they violated federal law in the past," *see P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993), Plaintiff's request for a declaratory judgment stating that Defendants acted with deliberate indifference in violation of his constitutional rights is barred.

Plaintiff makes two requests for injunctive relief: (1) an order for Commissioner Quiros or his agents to arrange for a medical practitioner to evaluate his needs for surgery, physical therapy and other follow-up medical treatment; and (2) an order to carry out without delay the treatment directed by the medical practitioner.[8] Construed broadly, the complaint suggests that Plaintiff is still deprived of medical treatment for his left hand and is thereby subjected to an ongoing deliberate indifference to his medical needs. Accordingly, the Court will permit Plaintiff to proceed

---

[8] Plaintiff's requests for injunctive relief against all Defendants except for Commissioner Quiros are moot insofar as he is no longer housed at either HCC or Cheshire. *Salahuddin*, 467 F.3d at 272 (noting that "an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility"); *Lapierre v. Lavalley*, No. 9:15-CV-1499(MAD/DJS), 2016 WL 4442799, at *3 (N.D.N.Y. Aug. 23, 2016) (holding that the plaintiff could not seek injunctive relief against correctional staff at a prison to which he had been transferred because they were not defendants in the case and that he could not seek injunctive relief against staff at a former facility because his transfer mooted his request for injunctive relief).

on his Eighth Amendment official-capacity claims for injunctive relief against Commissioner Quiros.

## ORDER

The Court enters the following orders:

(1) The case shall proceed on Plaintiff's Fourteenth Amendment medical indifference claims against Dr. Ruiz and Doe #1 (Mr. Dobos) in their individual capacities; on his Eighth Amendment medical indifference claims against John/Jane Doe #2 in his or her individual capacity; and on his Eighth Amendment medical indifference claim for injunctive relief against Commissioner Quiros in his official capacity.

All other claims, including Plaintiff's official-capacity claims for declaratory relief or monetary damages, are DISMISSED with prejudice. The individual-capacity claims against Commissioner Quiros are DISMISSED without prejudice.

The clerk is instructed to identify Mr. Dobos as Defendant Doe #1 in the list of named defendants on the docket.

(2) The clerk shall verify the current work address for Dr. Ricardo Ruiz and Mr. Dobos with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses on or before **January 6, 2023**, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing. If a defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the Complaint and this Order on Commissioner Angel Quiros in his official capacity at the Office of the Attorney

General, 165 Capitol Avenue, Hartford, CT 06106, and to file a return of service within **thirty (30) days** from the date of this order.

(4) The Clerk cannot serve the complaint on Medical Supervisor John/Jane Doe #2 because Plaintiff has not provided the first or last name for this Doe defendant. Plaintiff will have **ninety (90) days** from the date of this order to conduct discovery and file a notice identifying the John/Jane Doe #2 Defendant by his or her first name and last name. He is advised to seek the assistance of the Department of Correction's Inmates' Legal Aid Program for this process. The Court will dismiss the claims against any Doe defendant for whom Plaintiff fails to provide a first and last name within the time specified herein. *See* Fed. R. Civ. P. 4(m).

(5) The clerk shall mail a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(6) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The defendants may also include any and all additional defenses permitted by the Federal Rules.

(7) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed by **June 12, 2023**. Discovery requests shall not be filed with the Court.

(8) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at `http://ctd.uscourts.gov/administrative-standing-orders`.

(9) All motions for summary judgment shall be filed by **July 12, 2023**.

(10) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive

motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion will be taken up as unopposed.

(11)   If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. **<u>Failure to do so may result in the dismissal of the case.</u>** Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the defendants or defense counsel of his new address.

(12) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. Plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** at Bridgeport, Connecticut, this 12th day of December 2022.

　　　　　　　　　　　　　　　　　　　 */s/ Kari A. Dooley*　　　　　　　
　　　　　　　　　　　　　　　　　　　KARI A. DOOLEY
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE